Thank you, your honor. It may please the court. The decision below should be reversed because there are plausible allegations of deliberate indifference. There was a substantial likelihood that Neil Basta's right to effective communication was being violated. Novant knew of the substantial likelihood and Novant failed to adequately respond. To set the stage further, Novant also knew that Mr. Basta was deaf and knew that his preferred and most effective form Do you allege or does the record do you claim in the complaint that the hospital knew that their machines would likely fail? And then of course the second prong of of the deliberate indifference test if we were to apply would be that they failed to act despite that knowledge. In other words, I thought they assumed they were going to comply. They assured your client that they were going to comply. We'd take care of it. And when he got there, they gave him a machine which would have complied, but the machine didn't work. Apparently it malfunctioned. I think that's what you allege. So they removed the machine and put in another one. Apparently it malfunctioned too. And so the deliberate indifference or is that just negligence or maybe not even negligence? I thought they assumed they had a responsibility. They thought they could discharge it and they were unable to do so because of malfunctions. And we have to address whether that's intentional discrimination. That's the standard. Yes, that is deliberate indifference. So they provided the first device that malfunctioned, as you said, then the second device. But after that device malfunctioned, nothing more was provided. Nothing more on the first day of the admission and nothing on the second and third days of the hospital admission. But they didn't know they were going to have misfunctions and they didn't deliberately ignore it. Apparently they didn't have any more machines. But the fact that two machines, they tried to comply, two machines failed and they didn't know that in advance. If they knew it in advance and didn't do anything about it or if they had an experience the prior week where they had failed two machines again and then didn't do anything about it, that's indifference. But if they tried, maybe they were negligent, but we're talking about intentional discrimination. And I don't quite see why the hospital, they thought they were able to comply and they tried to comply. And actually the machines, what it was a fuzzy and choppy, it was blurry and choppy, the machines were. That's right. The problem though is that there's no requirement of the advanced knowledge. Once they have knowledge that the device has malfunctioned. Give me the standard that we had in Kuhn or deliberate indifference. In Kuhn, the standard is three part. First, substantial likelihood of harm to a federally protected right. Second, the defendant entity's knowledge of that substantial likelihood. And third, their failure to adequately respond. Okay. So I'm addressing the knowledge of the likelihood failure of the machines. And the question is, is that pleaded? Is that shown? And I didn't see it. Now you can point to that if you is that after having that knowledge, they ignored it or failed to act despite that knowledge. I think that's what Kuhn requires. Yes. So starting with that second factor in paragraphs 20 and 21, we discussed the malfunctioning VRI where staff are present. In fact, the policy, which is empowers the staff to provide devices. In fact, they did and they malfunctioned. And really for that third factor, it's adequately respond. So whether they adequately respond. Let's get over the first two. Did they have advanced knowledge of that? There's no allegation that they knew they were going to be deficient. They thought they were complying. Your Honor, even if they thought that they were complying, they knew that their efforts were not enough once the devices malfunction. Just because they have one effort providing two devices is not enough. They also need to adequately respond to ineffective communication. And that's what's important here. Once the second device malfunctioned, they took no further efforts not to provide a third VRI device, not to call in person interpreter. There's no out. That doesn't show deliberate indifference. That shows an inability to respond. They didn't have any more machines. I'm sure they would have brought more. Your Honor, there's no allegations whether or not there was any more machines. They had two 2200. That's not in the face of the complaint. And that's what's important. This is the 12. You have the burden. We do have the burden, but on the face of the complaint, there's no allegations from staff members saying, Mr. Basta, we would have provided a third day of your advice, but we don't have one. And in fact, Mr. Basta requested an in-person interpreter before arriving to the hospital. You requested an interpreter. Well, it's in person. This one is a remote person. I mean, it's an interpreter. And you're not challenging the fact that had they had a perfectly working machine with a remote interpreter, that wouldn't have satisfied the act. It's possible it would not satisfy the act. Well, let's not get into that. I don't know if you allege it, but there's a regulation that's just flat against you on that. You can't provide a machine. No, Your Honor. Of course, typically in most circumstances, you could provide VRI so long as it's effective in the circumstances. Paragraph 21 states that the outlet to plug in the VRI device was far away from his wife's bed during the delivery. And so there was allegations that he could not effectively and participate in his wife's birth. But the allegations... Was this plug-in a receptacle, an electrical receptacle, or is it a different type of plug-in? It's not alleged, but typically VRI devices have a standard outlet plug. But Your Honor, the allegations of in-person interpreters are important because Novant had advanced knowledge of a need for ASL interpreters and a preference for in-person ASL interpreters. Most importantly, there's no allegations for any attempts to do anything once the second VRI device malfunctioned. No allegations that Novant called a service and said, could you provide an in-person interpreter? And the service told them we cannot during the three days of the hospital admission. That's important. That's important to show that they failed to adequately respond. And that's where the district court got it wrong. There's no need for systematic and pervasive failures or widespread failures when you have information that the defendant... I think you're misconstruing the systematic illusion. The systematic illusion is, if you don't have actual knowledge and you had a systematic failure, that imputes knowledge. But the requirement was still knowledge. So if every time they tried these machines in the last month and they failed, then you could argue that imputes knowledge to them. But the test is pretty from Kuhn and Kuhn restates others. If we have the deliberative difference standard, that's not even a sure thing because the question is whether that satisfies intentional discrimination. But let's assume we're under that for the point that you've alleged that. And it seems to me the two big elements you have is you have to show that the hospital knew that their machines were likely to fail and did nothing about it. And of course, if they had a systemic failure, that would be imputed knowledge. But they don't need systemic failure, but they still have to have that knowledge. And you haven't alleged that. Your Honor, two responses to that. First, we have alleged that they have the knowledge that their VRI devices would provide ineffective communication. It doesn't have to be in advance. We see here in the delivery room, the VRI devices were malfunctioning and then Novant took no further steps. Second- They got another machine. They pulled the one out. They thought it was malfunctioning and put another one in. And they obviously recognize their responsibility. They obviously tried to take care of it. They assured you they were going to do it. This is not a situation- Let me ask a question of you. It seems to me that your interesting dialogue with Judge Dunn on what they could have- I thought the strongest point in your case was that this was all thrown out on a 12B6. And so, we have to take everything that you say is true. But isn't this a close enough case that it would be good to learn a little bit more about it and get the hospital's point of view and get your point of view? In other words, normally, an immunity is most effective if it's granted at the beginning. But what I wonder is whether this has enough factual uncertainty to it and is pretty darn close. Knocking it out on 12B6 seems to me a little bit premature. I think it would profit everybody to know more than we can just glean from the pleading. I mean, I'm not sure how it will end up. But the question here is whether you plausibly plead a violation. And I read through this and I just want to know what you requested and what the hospitals did and what knowledge the hospital had and all the rest. What do you think about that? Do you think we need some more development of this? Yes, Judge Wilkinson, I absolutely do. And I do see that my time is up. Can I respond further to you and briefly conclude? Why don't you save that? You've got some rebuttal time. Why don't you save it for that point unless my colleagues have questions? All right. Let's hear from the government here. You're welcome to wear your mask when you're arguing, but you're not required to. Thank you, Judge Wilkinson. May it please the court, Noah Vocatlin-Dell for the United States. I'd like to start with one of the comments that Judge Niemeyer made earlier that these sort of and pervasive problems requirements that the district court came up with is a way of imputing knowledge, but that it's not actually necessary if there is actual knowledge. And we very much agree with that. That is the key issue here with what the district court got wrong. The problem here is that after these two VRI machines malfunctioned, the allegations in the complaint are that Mr. Basta made repeated additional requests for an interpreter. And those additional requests put the hospital on notice that the VRI machines that had provided were not enough to provide effective communication to Mr. Basta. And at that point, they had a duty to investigate what needs Mr. Basta had and how they could deal with that. But the allegations are that they did absolutely nothing at that point for the remaining two plus days of the hospital stay. They did not provide any form of auxiliary aid whatsoever. And for we would point to the Bax case from the Ninth Circuit that the defendants put in on the 28J letter here. That case has not been published in the Federal Reporter yet, but at page eight of the Westlaw version of it, it says, quote, a request for accommodation rather performs a signaling function. It puts the covered entity on notice of the need for an accommodation. And here, that's precisely what happened. The provision of the VRI machines may well have provided the sort of good faith response to the initial requests that Mr. Basta had for an auxiliary aid. But once Mr. Basta made those additional requests throughout the remainder of his stay at the hospital, they were put on notice that further auxiliary aids were necessary because those VRI machines were not working. And at that point, they had actual notice under the Kuhn standard and they were required to provide effective auxiliary aids or at least provide a good faith response at that point. And again, the allegations are that they did nothing. But where's that allocation? What paragraph? Sure. So they're at paragraph 26, for example, throughout Mr. Basta's hospitalization from June 2nd through June 4th, 2017. Plaintiffs made repeated requests for interpreters. Also, paragraph 29 of the complaint specifically says that despite repeated technical issues with the VRI and Mr. Basta's resulting requests for an in-person interpreter, defendant staff failed to provide an interpreter or an effective alternative auxiliary aid to plaintiff. So there, the allegations are that after- Is there any suggestion that the hospital had the capacity to do so at that point? No, Your Honor, but again, this is where the procedural posture of this case is important. We're here on a 12B6 motion. All we have are the four corners of the complaint. And based on the allegations in the complaint read favorably toward Mr. Basta, the allegations are that they did not investigate his communication needs. They did not provide any form of auxiliary aid. And the question is not just whether they had an additional VRI machine, but whether they provided any effective form of communication for Mr. Basta. And again, that could have been an in-person interpreter. It could have been another VRI machine. It could have been- These are failures and they may be negligence, but my question is, it seems to me all the allegations point to the fact that they were not deliberately indifferent to his needs. To the contrary, they recognized his needs and provided a machine and said, we'll take care of it. And then when that machine failed, they provided another machine, but they never said, we're not going to provide a machine. And basically their machines failed. It was an unfortunate thing, but we're talking about this deliberate indifference and you're talking about sort of a negligent failure to provide. They didn't thumb their nose, deliberate indifference is sort of thumbing your nose at the requirement. They didn't do that. Basically they failed to do it. That's the thing. But they tried. And so that doesn't show deliberate intentional discrimination. It shows maybe their machines hadn't been serviced or whatever their failure was, but they clearly recognized their responsibility and tried to do it. They failed though. But let me ask you, I'm sorry. Yeah, go ahead. Wouldn't part of the hospital's responsibility when they get a request and have the knowledge that a person's coming in with this disability, one, make sure the machines work, make sure they can accommodate the victim, make sure they can provide the services that are needed and required by law. Yes, your honor. That is their requirement under the regulations, 45 CFR 84.5. So the way, if I look at this complaint, it says to me, they were notified that this person's coming in with a disability and nothing worked. Nothing was provided. He got no service. That's right, your honor. And that certainly is enough to show deliberate indifference. But even if you were to look more narrowly, as Judge Niemeyer is pointing out, looking at those provision of those VRI machines, even if one were to assume that that is an initial good faith response, the right way to think about this is that that essentially resets the deliberate indifference. I don't even know why you want to presume that. I mean, what if they, it seems to me, it would have been expected as part of their duty to check the machines before they're depended on to make sure they work. Of course, we don't know that yet. All we know is the request was made and nothing got done. That's right, your honor. Nothing got done, but I mean, no service was provided. That's right, your honor. And I think as a parallel case to look at would be the Sunderland case in the 11th Circuit, which the district court discussed. And in that case, the court went through several different plaintiffs and their specific hospital stays and what was going on with them. And in that case, the named plaintiff, Ms. Sunderland, came in and requested an interpreter, which the 11th Circuit said put the hospital on notice that she required an auxiliary aid. They initially didn't provide her with anything. Eventually, after she had surgery, they provided her with a VRI machine, just as VRI machines were provided to Mr. Basta here. But just as the VRI machines here allegedly malfunctioned there, the VRI machine also malfunctioned and froze and didn't allow her to- Your basic point to follow up on Judge Traxler's point is that the district court analyzed this under an incorrect standard. And the correct standard is you don't have to have a systematic and pervasive problem. If you have a single individual, as I understand the Rehabilitation Act, if you have a single individual that lets the hospital know beforehand that I have a disability, I'm going to need an VA, the hospital has put on notice of all of that and it fails to respond, even though that's a single incident, it would still be cognizable under the Rehabilitation Act if the hospital's conduct was one of being notified of something and doing nothing or at least the bare minimum. But we look at this through the eyes of a single individual and you can fail to accommodate a single individual. You don't have to have systemic deliberate indifference. It's enough if you are aware of a single individual's plight, which here was quite serious. He wanted to be able to communicate his wife's disability to the doctors. I mean, it doesn't get more basic than that. And the regs on the rehabilitation provide that for the accommodation of a companion, because a lot of people, when they go into the hospital, they can't fend for themselves. They're either too sick to do it, or they have language problems or whatever. And if they bring someone into a system, the hospital has to do something about that if they're notified of it. And you look at this from each individual patient, not from a systemic point of view. And I think the district court has to review it under the proper Rehabilitation Act standard, which was the problem here. You've got a very serious situation where somebody is in childbirth, and the one person who knows about her difficulties and everything and can alert the hospital to it is not able to understand or communicate with the Rehabilitation Act is going. That's correct, Your Honor. I think that that individualized analysis is required by the language of the statute, which is individually focused. All of the precedent on this, whether you look at a case like Sunderland, a case like the Lease case from the 11th Circuit, Leffler from the 2nd Circuit, all of these cases involve individual hospital stays with individual problems where they were not given proper auxiliary aids. That's correct. And for those reasons, Your Honor, we ask that you reverse the district court. Mr. Stephens, we'd be happy to hear from you, sir. Good morning, Your Honors. May it please the court, counsel, my name is David Stephens. I represent the Appley Novant Health, Inc. and its affiliated entities, which are the defendants of the underlying lawsuit. A well-pleaded complaint tells a story, and under federal pleading standards, that story must provide enough facts to show that the plaintiff is plausibly entitled to the relief that he seeks. The operative complaint in this case doesn't do that. Instead, it tells a very narrow story that when its allegations are read in their collective whole, doesn't make out a violation of the law. Paragraph one of the complaint says it all. Quote, by ignoring or denying plaintiff's requests for qualified in-person interpreters, defendants failed to ensure effective communication. That the story of this complaint is about a person who wanted a live interpreter and didn't get one. That's it. And that's not enough to state a claim under the Rehabilitation Act and the Affordable Care Act. When this court affirmed the decision... Excuse me, counsel, but the Rehabilitation Act talks about a need to accommodate persons with impaired hearing or vision. And doesn't that include companions with a disability as well as the patients? Because the Rehabilitation Act reaches companions. Yes, it does, Your Honor. And we did not contest the district court on this appeal that Mr. Basta, as a companion, was entitled to accommodation under the Rehabilitation Act. You can see that. And you can see that the Rehabilitation Act extends to companions with a disability as well as with patients. Yes, Your Honor, the Rehabilitation Act extends to companions as well as patients with disabilities. Well, then why, if an individual's rights are infringed under the statute, why wouldn't that be cognizable? If in light of what you have said, that the Rehabilitation Act extends to persons with impaired vision or impaired hearing, and the disability includes companions as well as patients, how can it possibly be said that if the act is violated, we can just shrug it off by saying, oh, well, the violation just affected one person, no problem. If we found deliberate indifference here, how can we just shrug it off by saying, oh, it was just one person? Because we have individual plaintiffs bringing actions under the Rehabilitation Act and under all kinds of statutes, asserting their individual rights, individual rights, not systemic failures or whatever. And we've never said when an individual brings an action, we're going to toss you out of court because there's no systemic failure, which is what the district court was a very fine district judge, I have great respect for, and we share that. But I just don't think if we get to the point of saying that none of these statutes are violated because there's no systemic or pervasive problem, then what happens to the individual plaintiff who suffered a violation? It seems to me that this is such a path-breaking theory, this traveling in exactly the wrong direction. I prefer really to see individual claims brought I'm concerned about where you're going with the fundamental right of the single individual to assert a right under one of these civil rights statutes. Does it make sense? I understand the point that you're making, Judge Wilkinson. But again, when we talk about a systemic or pervasive issue, I think that what even Judge Conrad said to the court below, is you're looking at systemic, pervasive, and known, and whether or not the entity or the individual at the entity knew of the suspected violation and failed to act on it. The counsel, I believe for the government, referred to the Sunderland case. In the Sunderland case, the individual complained about the non-working VRI devices. When we look at the underlying complaint in this case, there is no indication after paragraph 21 of the complaint that Mr. Bosta ever complained the second VRI device didn't work. It only says the first VRI device didn't work. It was swapped out. This goes to the need to develop the evidence further under the proper standard. What you just said is a good point, but it's a point that needs to be made by you in the course of the further development of the evidence in light of the correct standard. But that's a discovery point, or a summary judgment point, or conceivably a jury point. It isn't. It's not a point for tossing it out, it seems to me, under 12B-6. Well, your point is taken, Judge. But in fact, the plaintiff's complaint in paragraph 28 makes it clear that Mr. Bosta did not complain about the non-working VRI devices until June 11, 2017. Is it your position that the disabled person has a duty to tell you multiple times that he has a disability and what his needs are? That is not my position, Judge. Why do you say he has a responsibility to complain more? Well, because I don't think this complaint anywhere alleges that he once complained that the second VRI device didn't work. But you agree he doesn't have to. He's already told you once. He's already written. You've acknowledged it. You've provided two machines, whether you knew they worked or not. That's Judge Wilkinson says a matter for discovery. But you seem to be saying he's got, in order to maintain his rights, he has to tell you multiple times of what his disability is and what his needs are. No, and respectfully, Judge, that's not the point that I'm trying to make. The point that I'm trying to make is that simply saying I want a live in-person interpreter is not a corollary for the second VRI device that you gave me is not working. And if the individual does not report that the second VRI device isn't working, then there's no way that the hospital can be on notice that the accommodation offered to this individual was insufficient. Wait, wait, wait. Say that again? The hospital is not on notice? Say that again. I don't want to misstate your position. In paragraph 20 of the complaint, it's alleged that a first VRI device was given to Mr. Basta. It was blurry, choppy, and failed to provide effective communication. In paragraph 21 of the complaint, it says a second VRI device was given to Mr. Basta. And it alleges that that VRI device was blurry, choppy, and failed to give effective communication. A reasonable inference from paragraphs 20 to 21 is that Mr. Basta told somebody or the hospital knew that that first VRI device Say that again? A reasonable inference from paragraph 20 to 21 is that Mr. Basta told someone or the hospital knew that that first VRI device didn't work. Is that a reasonable inference in favor of the plaintiff, which is our requirement? I think that that's a reasonable inference in favor of the hospital. But that's not the 12B6 motion, 12B6 standard. But I also think that a reasonable inference from this complaint is that after paragraph 21, there's no indication that Mr. Basta said this second device you gave me doesn't work. And so you think he had a responsibility then to tell you his needs have been satisfied, or he doesn't care anymore, or he doesn't worry about his wife and child? Well, Judge, I believe that he has a responsibility to say, I am not receiving effective communication from this device. I would like something else. You think having common knowledge it doesn't work? I don't. I don't. Everybody, everybody that sees it knows it doesn't work. I don't think that the complaint alleges that everyone who saw him knows that it didn't work. There's no allegations that the plaintiff said anything, or that anyone at Novant observed or saw the failure of the device. Thank you. Going back to this court's decision in Coon v. North Carolina just a few weeks ago, again, deliberate indifference is a very high bar. In order to clear that bar, a plaintiff is going to have to show that there was actual notice by the defendant. And again, when we look at the full allegations of this complaint,  put Novant on notice that the second VRI device was failing. As to another point that we made in our briefing. How do you address the fact that the complaint alleged that both machines were malfunctioning? I don't think that there's at least accepting all of the allegations pleaded in the complaint is true. Obviously, we have to take, as a matter of record, that the second device was in fact not working. Well, he alleged that. That's correct. But he doesn't allege that we knew it wasn't working. Well, if they plug it in, it's not in it. Why did they replace the first? Ostensibly, I think the inference could be made that there was some knowledge that the first one didn't work. And that shows that the second one is, and they plug it in and look, and the same image comes up, it's blurry and choppy. Everybody's standing around right after they plug it in, comes on, you can't see anything. That seems to be hardly a good argument. The argument that Mr. Boss' counsel made at the court below is that for a very short period of time, the VRI device was blurry and choppy. And the predominating complaint about the second device was that it needed to be plugged into the wall and was too far from his wife's bed. Well, he said that in addition, and he also said that he preferred in person. But I'm just addressing your argument that there's no suggestion that he complained about the two machines malfunction. I thought he did. To be clear, Your Honor, my argument is that he did not complain about the second machine malfunction. Well, he alleged that both machines didn't work. And it seems to me when they plug in the second one and it has the same symptoms, who plugged it in? He didn't plug it in, did he? The staff plugged it in. I don't believe that the complaint has any allegations as to who plugged it in. But they just delivered on the front door. That's sticking in the hall and say, patient, go find that thing in the hall and plug it in yourself. I don't believe there's any... You may have other arguments, but I think what you're arguing is almost frivolous. Well, what we're arguing, Your Honor, is whether or not Navant had any actual notice of the fact that harm was substantially likely to occur. Well, I think that's the issue in the case. And there you make a much more forceful argument. In other words, was the hospital ignoring its responsibility and ignoring the fact that the machine didn't work after having knowledge? And they clearly didn't have... There's no allegation they had advanced knowledge about two machines going bad. And it seems to me the deliberate indifference is intended by the discrimination. And so the question is, did the hospital intentionally discriminate against this man or were they trying to comply and fail to do so, albeit negligently? And I agree with you, Your Honor. I think that that is the issue that's set out in this case, which is, was there foreknowledge that there may be an issue with the VRI device in advance? And if there was that foreknowledge, then certainly there's a possibility that that would lead to a finding of deliberate indifference. But even if there were systematic and pervasive issues with the VRI device... Why don't you go back to systematic? I mean, there's no suggestion one way or the other. Systematic is an alternative for providing knowledge. In other words, if you've had... The prior week, you had the machines that didn't work. It seems to me at that point, you may be on knowledge that the machines don't work and you're going to have to check them out, but you deliberately ignored that. But that's not the allegation in this case. Systematic is irrelevant. The question in this case, I think the question in this case, is whether after the hospital provided two machines, can you base a claim on the failure to provide a third machine or get an interpreter when... And the answer might be they... I mean, they didn't do it clearly. They didn't provide them with any mechanism for communicating. The question is, was that the product of intentional discrimination or was it just a negligent failure? Correct. I agree with you, Judge. And that brings us back to the Kuhn case as to whether or not Novant was on notice that the second device wasn't working. And paragraph 28 of the complaint does quite clearly say that Mr. Basta did not complain about the non-working VRI device until June 11th. So, it would be impossible for Novant to have been on notice that the second VRI device wasn't working if he did not raise his hand and say, you've provided me something that's broken and isn't working. There's nothing... Didn't he continue to ask for an interpreter after the second machine? He did, Your Honor. That's alleged in the complaint. And again, I don't know whether... Accepting all of the well-pleaded facts in the complaint is true. He alleges that on multiple occasions after his wife gave birth on the first day, he asked for a live in-person interpreter. That draws us back to the Godby versus Iredell Memorial Hospital case, which is to say that asking for a live interpreter isn't enough to put an entity on notice that some other accommodation isn't working. Let me switch gears on you just a second. You're familiar, I'm sure, with this statement in the district court's order that there must be a systemic and pervasive problem that such must exist in order to succeed in proving intentional discrimination. Do you agree that's an accurate statement of the law? Is it your position that's an accurate statement of the law? I would slightly modify that to say systemic, pervasive, and known. And what? Known. And I believe that we say that in our appellate brief, Your Honor, which is a systemic and pervasive problem, if not known. But one incident would never, under any circumstances, be a basis for a successful in a showing a deliberate indifference. It must be that the individual or entity accused of discriminating against the individual was aware of the fact that a requested or provided accommodation would fall short. That's not my question. My question is, is it your position that a single isolated event can never be the basis for a successful lawsuit to show intentional discrimination or deliberate indifference? No, that's not my position, Your Honor. So you don't agree that this statement by the district judge is accurate as a statement of law? As a statement of law, again, I think systemic, pervasive, and known. So what I think we're getting at there, and I believe that Judge Niemeyer pointed that earlier, which is that might be one way to get at this. But that's not true of an individual case. But it's not the only way. It's not the only way. We completely agree with that point. Okay, thank you. But you agree that was the standard the district court used? I believe that what the... I mean, it's right there in the opinion. I believe that the district court used the word may in that, which is to say systemic. A court may find deliberate indifference under systemic... rather than an isolated incident must exist to succeed in showing intentional discrimination. I believe that what the district court was commenting on there is a long series of cases that were argued and briefed at the district court level, and again, briefed here, where there were such issues. But to your question earlier, Judge Traxler, if there's an individual who walks into a hospital, requests a live interpreter, is provided a VRI device, and says to the hospital, this VRI device isn't working, I would like a live interpreter. And a second VRI device is given to that individual, and the individual says to the hospital, this VRI device isn't working, I would like a live interpreter. And the hospital ignores them entirely and does nothing after being placed on notice of repeated failures, and timely notice of repeated failures. I believe you support a finding of deliberate indifference there. But absent the notice, again, this is an actual notice standard and high bar, that there has to be that element of notice in order for the party on the other side of the communication to understand and engage in conduct that would violate the law. I see that I'm just about out of time, so I don't want to start any more questions or any more issues, but if the court has any further questions, I'd be happy to answer. All right. We thank you very much, sir. Appreciate it. Mr. Hammond? Thank you, Your Honor. I would like to address three main points on rebuttal, one about the 12B6 standard, one about specific portions of the record, and one about viewing the case in the eyes of the individual. Picking up where I left off in the start of my argument, I agree that the 12B6 standard is very important here. We have to draw all well-pleaded allegations and reasonable inferences in favor of Mr. Basta. In fact, there were only two cases that the parties collectively discussed at the 12B6 stage, Esparza from the Western District of Louisiana and Lucky from the Southern District of New York, which were decided on motions to dismiss. Both those cases resolved in favor of the deaf plaintiff. It's important for us to move forward to discovery to understand these fact-intensive issues, very much so when I had my colloquy with Judge Niemeyer about the amount of VRI devices, the ability to obtain an interpreter, as well as Judge Traxler's had a test run beforehand to make sure whether these devices worked properly. That's all important. That's all information we can glean from discovery. My second and related point is about the record. My friend on the other side made much about the fact that after the second VRI device malfunctioned, there wasn't allegations of any complaints. As a threshold matter, our position is that no complaints are required. However, there are a few important points. First, as my colleague of the government pointed out in paragraph 29, it states, despite repeated technical issues with the VRI and Mr. Basta's resulting requests for an in-person interpreter. After the second VRI device malfunctioned, he made additional requests. Earlier, I think you also alleged that both machines were malfunctioning and they didn't provide any interpreters. The inference from that is that everybody knew there was no service being provided. I agree. That's my next point. Effectively, this is an interactive process where mom and dad are trying to make sure they have the safe delivery of the child. Naturally, the hospital staff would be communicating with Mr. Basta during the birth of his child. In addition, in paragraph 22, it states, no other auxiliary aids or services were provided to Mr. Basta. If Novant believed that VRI was functioning properly, there's no indication of why they didn't provide it on the second and third day. Moreover, it's one last point about the record that didn't come out. In paragraph 17, it states, when Mr. Basta made a request even before the three-day admission started, it states, a member of defendant staff assured Mr. Basta that an in-person ASL interpreter would be procured once Mr. Basta contacted defendants to inform defendants that he and Mrs. Basta were on the way to the medical facility. The reasonable inference here is that they have an ability to procure an in-person interpreter. Obviously, if someone's going to a hospital and they're having contractions, they would require an interpreter fairly quickly. This allegation and the reasonable inference is that Novant has that ability. Now, third, let me turn to the analysis under the eyes of the individual. Now, my friend on the other side added a word to the district court statements about systemic and basic failures, knowing. That's the only word that matters, the operative word, whether they knew, and they did. There's no requirement that they have advanced notice or a laundry list of past problems with accommodations. What's important is once the hospital provides that accommodation, they have a duty to make sure that that accommodation is working properly. If it is not, they have an obligation to make sure that they provide further accommodations. That just wasn't the case here. To emphasize, Mr. Basta forever lost the chance to participate in the birth of his child. He also didn't have the opportunity to advise hospital staff about his wife's medical concerns, about her history of blood loss with a prior childbirth, or the fact that she was unconscious during a prior childbirth. He did not and was not able to communicate that information. We have allegations in the complaint that there were requests before he arrived on his way to the hospital, and more specifically, those repeating and resulting requests after VRI malfunction. Given the 12B6 standard, it's important to send this matter back to the district court so the parties can conduct discovery and take depositions and exchange documents to understand exactly what happened here. And if the court has no further questions, I thank you very much for your time. The decision below should be reversed and revamped. Any further questions from anyone? One quick question. You sure may. This is really mostly a matter of personal curiosity. Is it your position that I get from reading this complaint that he was assured he would get an interpreter by the hospital? Yes, specifically the timeline. I'm looking at 17th paragraph of your complaint. That's correct. So just to give the quick before part, so he had pre-registered and requested one in advance. Nolan said, when you're on the way to the hospital, give us another call. He did so, and once he did, the hospital assured him, as paragraph 17 states, that an in-person ASL interpreter would be procured. Thank you, your honors. Let me ask you one further question. If the machines were working beautifully and had a remote interpreter, would that fulfill the accommodation? In this case, it would still be a fact issue, again, just because of the proximity of the device and also just given the nature of communication. I was referring to the if it was working well, he would probably not be entitled to have an in-person if he had a remote person. Of course, I'm not trying to fight the regulation, and I would agree that it would be a very hard case for us if it worked properly. The only point I just wanted to raise, just to make sure I didn't waive it, was just given the nature of the childbirth, of potentially how fast moving and literally moving things could be, that having a screen, and depending on how big the station, if there are multiple nurses, multiple doctors, but I would agree on the whole, if they have a remote interpreter that satisfies the regulations, that in most circumstances, that certainly would provide effective communication.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, William B. Traxler Jr.